UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Antoinette Ivery PR of Estate of
Kaniesha Coleman,
    Plaintiffs,

v.

Jeffrey Hudson, acting in his
Individual and
Official Capacity as Medical
Examiner for the Wayne County
Medical Examiner's Office and
Wayne County Municipality,
    Defendant.

Case No. 2:22-cv-12440
Hon.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

_____

WEBSTER LAW OFFICE, PLLC
Dionne Webster-Cox (P70422)
Nicole Wisnewski (P84618)
Attorneys for Plaintiff
24100 Southfield Rd., Suite 200
Southfield, MI 48075
(734) 215-2444
Fax: (734) 943-6069
dewc@websterlawofficepllc.com
nmw@websterlawofficepllc.com

_____

There is a current premises liability and wrongful death action for the killing of

Kaniesha Coleman in the Third Circuit Court for the County of Wayne against

Plaintiff and Downer Development, LLC. Case number 22-009058-NZ.

**COMPLAINT AND JURY DEMAND**

Plaintiff states:

## COMMON ALLEGATIONS

1. This Monell Claim arises under 42 USC 1983. Jurisdiction is conferred by 28 USC 1331, 1343(a)(3) and (4).

2. Plaintiff asks this court to exercise Supplemental Jurisdiction over the related matters as the civil claims against the individual defendants arise out of the same common nucleus of operative facts as the federal claim.

3. Plaintiff Antoinette Ivery acts as Personal Representative to the decedent, Kaniesha Coleman and her estate, in this matter.

4. Plaintiff, and Decedent, are/were residents of Wayne County, Michigan and are United States Citizens.

5. It is under information and belief that Defendant Hudson is a resident of Wayne County, Michigan. For all relevant times in this matter, Defendant Hudson was employed by the Wayne County Medical Examiner's Office (ME).

6. When these alleged events occurred, Defendant Hudson was acting within the scope of his employment and under the color of law.

7. At all material times, Defendant Wayne County and its department, the Wayne County Medical Examiner's Office, employed Defendant Hudson and is liable for his acts. The county is also liable because of its policies, practices, and customs, which led to the complaint of violation.

8. On July 16, 2020, Kaniesha Coleman, a black female, (Decedent) was shot in the abdomen under unknown circumstances. She was taken to the hospital at 7:38 PM and received emergency medical treatment.

9. While in the hospital, Kaniesha indicated she had been at home when she heard gunshots and realized she had been hit.

10. It is upon information and belief that the Police did not find a gun at the scene of the injury.

11. On July 18, 2020, at 1:41 PM, Kaniesha Coleman was declared dead from complications arising from a gunshot wound in her abdomen. Exh. 1.

12. Defendant Hudson, a medical examiner, submitted Kaniesha Coleman's autopsy on July 19, 2020, ruling it a homicide.

13. On September 3, 2020 in a Post Mortem Report submitted by Defendant, it states that, "There was no soot or gunpowder stippling noted on the skin anywhere near the abdomen." This indicates the injury was not self-inflicted. Defendant then ruled death a homicide. Exh. 2.

14. On February 24, 2021, almost six months later, an addendum was filed by the Defendant stating that due to the witness reports gathered by Police, and because those witnesses passed a polygraph test, the cause of death would be amended to suicide. No medical or scientific data was cited- merely a reliance of polygraphed testimony. Exh. 3.

15. Police have indicated that the case is now closed due to the suicide determination by the Medical Examiner.

16. It is upon information and belief that this determination was made due to Decedent's race and economic circumstances due to the bizarre, unwarranted, and unreasonable transition from "Homicide" to a self-inflicted "Suicide" merely based on polygraph results, which are notoriously inaccurate.

17. Defendants are not immune via qualified immunity under MCL 691.1407 because their conduct was grossly negligent or intentional.

18. Defendants are not immune via qualified immunity because they violated the clearly recognized right against racial discrimination by government officials and any reasonable official would have recognized the violation.

## BACKGROUND

19. Plaintiff incorporates by reference the previous paragraphs of this Complaint.

20. In addition to this civil complaint against Wayne County's Medical Examiner's Office, Webster Law Office PLLC is also initiating another, separate, complaint of an instance where the Wayne County Medical Examiners changed the "homicide" determination of Isiah White, a black male, via Autopsy Report Addendum to "suicide". In that case, the ME is

claiming that Mr. White shot himself in the back of the head with a shotgun after the police department's "investigation".

21. This was autopsy report was conducted by a different Medical Examiner.

22. This separate matter shows that there is a pattern of behavior from the Wayne County Medical Examiner's Office to make outlandish suicide determinations for African American citizens based on little to no physical evidence.

## COUNT I
### Fourteenth Amendment Violation
### (Monell Claim - 42 USC 1983)

23. Plaintiff incorporates by reference the previous paragraphs of this Complaint.

24. Decedent's constitutionally protected rights that Defendants violated include the fair and equal treatment guaranteed and protected by the Equal Protections Clause under the Fourteenth Amendment.

25. Defendants, acting under the color of state law, unreasonably and without merit, switched Decedent's cause of death to "suicide" from "homicide".

26. It is upon information and belief that this determination was made due to the ethnicity of the Decedent and the perceived disposability of Decedent's case due to her race and economic status.

27. Defendants, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, or reckless disregard to Decedent's constitutional rights to be treated fairly and equally without regard to her ethnicity or economic status.

28. Defendants acted in knowing disregard to Decedent's constitutional rights and any Medical Examiner in Defendants' situation would know that this is a violation of Decedent's constitutional rights.

29. Defendant Wayne County, acting under color of state law, permitted this conduct and either holds policies, practices, and customs that allowed this conduct to flourish or is completely indifferent to the constitutional violations committed by its officers and has subsequently failed to stop these arbitrary suicide determinations.

30. If Defendants did not make a racial classification on Plaintiff, there was still no rational basis for this decision and Defendant Hudson abused his discretion by unreasonably determining that Decedent's death was a suicide.

31. L.J. Dragovic, the Medical Examiner for Oakland County, told NPR, in reference to this case, that changing a death certificate's cause of death is rare, and that he had never done it in his 35-year career. *See* Exh. 4.

32. When asked about changing a medical examiner's report due to a polygraph test's results, Dr. Dragovic stated, "That is not tangible evidence… If those

are used to persuade a person responsible for medical, legal death investigations to change something, it's got to be something much more than that." *Id.*

33. As a direct and proximate cause of Defendant Hudson's conduct, Decedent's investigation has been closed and justice has been systemically denied to Decedent.

34. As a direct and proximate cause of these policies, practices, and customs, Decedent was deprived of her constitutionally protected rights, described above, and has suffered serious reputational damage.

PLAINTIFFS REQUEST a judgment against Defendants in the amount that this Court finds Plaintiff to be entitled to with the addition of attorney fees, court costs, and interest.

### COUNT II
### Gross Negligence

35. Plaintiff incorporates by reference the previous paragraphs of this Complaint.

36. Defendant Hudson owed Decedent the following duties, including but not limited to

   a. complying with the COUNTY MEDICAL EXAMINERS Act 181 of 1953;

   b. complying with MCL 52.205(3), and with the rules and standards promulgated or adopted by reference to this act;

   c. complying with MCL 52.202(1)(a), which states that a medical examiner *shall* investigate a death caused by violence.

   d. complying with MCL 52.202(1)(b), which states that a medical examiner *shall* investigate a death that is unexpected.

   e. exercising reasonable care to produce accurate records; and

   f. ascertaining, through evidence and honest belief, a cause of death that was accurate.

37. Defendant breached each of these duties through gross negligence or reckless, wanton disregard by producing false documents.

38. As a direct and proximate result of Defendant's breach of these duties, Decedent has suffered the aforementioned civil rights violations as well as serious and significant damage to her reputation due to a false suicide determination.

PLAINTIFFS REQUEST a judgment against Defendants in the amount of $1,000,000.00, together with costs, interest, and attorney fees.

### COUNT III
### Negligent Infliction of Emotional Distress – Antionette Ivery

39. Plaintiff incorporates by reference the previous paragraphs of this Complaint.

40. The lack of investigation conducted due to the police's reliance on Defendants' report, and the baseless allegation that Decedent committed suicide has caused serious mental and spiritual anguish on Plaintiff.

41. The shock of the determination has caused the following physical manifestations:

    a. Lack of sleep, heightened stress, and physical bodily pains due to lack of sleep and prolonged stress.

42. Plaintiff is Decedent's mother.

43. The negligent determination directly created this shock and distress, so it occurred at the incident of the determination's release.

PLAINTIFFS REQUEST a judgment against Defendants in the amount of $1,000,000.00, together with costs, interest, and attorney fees.

Dated: 10/12/2022

WEBSTER LAW OFFICE, PLLC
/s/ Dionne Webster-Cox
Dionne Webster-Cox (P70422)