UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHER DIVISION

ANTOINETTE IVERY AS PR OF ESTATE
OF KANIESHA COLEMAN AND IN HER
INDIVIDUAL CAPACITY, DDL A MINOR
AND NHC A MINOR,

          Plaintiff,

v.

JEFFREY HUDSON, ACTING IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY
AS MEDICAL EXAMINER FOR THE
WAYNE COUNTY MEDICAL
EXAMINER'S OFFICE AND WAYNE
COUNTY MUNICIPALITY,

          Defendants.
_____/

Case Number 22-12440

Sean F. Cox
United States District Court Judge

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

In July 2016, Keniesha Coleman ("decedent") was shot in the abdomen "under unknown circumstances." She was taken to the hospital where she eventually died of complications from the injury. Following her death, a Wayne County medical examiner, Defendant Jeffrey Hudson, conducted an autopsy of the deceased and submitted a postmortem report of his findings in September 2020, listing the cause of death as homicide. However, in February 2021, an addendum was filed stating that based on witness reports gathered by police and conducted via polygraph, the cause of death would be amended to suicide.

In the fall of 2022, Antoinette Ivery, representing Coleman's estate and two minor individuals ("Plaintiffs"), brought this action against Defendants Jeffrey Hudson ("Hudson") and

Wayne County. Ivery alleges the change in the official cause of decedent's death and rationale for doing so constituted a violation of Plaintiffs' Fourteenth Amendment Rights under 42 U.S.C. 1983 (*Monell* Claim), Gross Negligence, and Negligent Infliction of Emotional Distress.

Defendants now move to dismiss the Second Amended Complaint ("SAC"). For the reasons below, the Court will **GRANT** Defendants' Motion to Dismiss.

## BACKGROUND

In July 2016, Coleman was shot in the abdomen "under unknown circumstances." (SAC ¶ 8). She was taken to the hospital where she eventually died of complications from the injury. Following her death, a Wayne County Medical Examiner, Hudson, conducted an autopsy of the deceased and submitted a postmortem report of his findings in September 2020, listing the cause of death as homicide. In that report, Hudson noted that there was no gunpowder present at the site of the injury, indicating the shot could not have been self-inflicted. (SAC, Exh. 2) However, in February 2021, an addendum was filed stating that due to witness reports gathered by police and conducted via polygraph, the cause of death would be amended to suicide. (ECF No. 6–4, PageID.82.)

Plaintiffs filed this action asserting claims against Defendants Hudson, in his individual and official capacity as Medical Examiner for the Wayne County Medical Examiner's office, and against the Municipality of Wayne County. In their Second Amended Complaint, Plaintiffs make the following claims:

    I.     Fourteenth Amendment Violation (*Monell* Claim, 42 U.S.C. § 1983) (Count I)

    II.    Gross Negligence (Count II)
    III.   Negligent Infliction of Emotional Distress – Antoinette Ivery (Count III)

    IV.       Negligent Infliction of Emotional Distress – DDL, a minor (Count IV)

    V.       Negligent Infliction of Emotional Distress – NHC, a minor (Count V)

## STANDARD

Defendants bring this motion under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Defendants raise four arguments in their motion. First, Defendants argue Plaintiffs' 42 U.S.C. § 1983 violation claim against Wayne County should be dismissed because there was no constitutional violation, and that even if there was, Plaintiffs' claims are based on mere unsupported conclusory allegations. Second, Defendants argue that the claim against Hudson should be dismissed because he has qualified immunity which shields him from any liability for a §1983 violation. Third, Defendants argue Plaintiffs' gross negligence claim as to Hudson should be dismissed because Hudson did not owe a duty to Plaintiffs. Finally, Defendants argue Plaintiffs' remaining claims for negligent infliction of emotional distress should be dismissed because Wayne

County and Hudson are immune from tort liability under Michigan's Governmental Tort Liability Act ("GTLA").

### I. § 1983 Claims (Count I)

Count I of Plaintiffs' SAC asserts a § 1983 claim against Defendants Hudson and Wayne County. To prevail on a cause of action under § 1983, a plaintiff must prove: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law. *North v. Cuyahoga Cnty.*, 754 F. App'x. 380, 384 (6th Cir. 2018) (citations omitted). In other words, a prerequisite to making a claim of a § 1983 violation is an actual, actionable constitutional violation.

Section 1983 claims against individual state actors can be asserted against them in their individual capacity, their official capacity, or both. *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). A § 1983 claim against an individual in his or her official capacity is simply a claim against the municipality itself. *Id.* If a § 1983 claim is asserted against an individual in his or her individual capacity, that individual can assert the affirmative defense of qualified immunity. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 484 (6th Cir. 2014). Qualified immunity shields public officials who perform discretionary functions from the need to defend against tort liability so long as their conduct does not violate clearly established rights of which a reasonable official would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008).

Determining whether government officials are entitled to qualified immunity generally requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff can show that a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation. *Id.* A district court will often rule that an individual officer

is entitled to qualified immunity based on the first prong of this analysis because, even when construing the facts in the light most favorable to the plaintiff, the individual did not violate plaintiff's constitutional rights. If this occurs, then the claim of municipal liability against the municipality also fails. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Here, in their SAC, Plaintiffs argue that Hudson's changing of Decedent's cause of death from "homicide" to "suicide" was made due to the ethnicity, race, and economic status of the decedent, constituting a violation of Plaintiffs' Fourteenth Amendment rights under 42 U.S.C. § 1983. (SAC, ¶¶ 20–22). This is a mere conclusory allegation, which does not constitute a Fourteenth Amendment equal protection violation. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008); *See also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiffs provide no factual support for their contention that Hudson's decision was based on Decedent's race or economic status. Since Plaintiffs fail to allege a constitutional violation occurred, there is no need to conduct an analysis of the second prong.

As stated above, a prerequisite to making a claim of a § 1983 violation is an actual, actionable constitutional violation. Without a constitutional violation by Hudson, there can be no liability for the individual, or the municipality. *Heller*, 475 U.S. at 799.

Plaintiffs failed to successfully plead a constitutional violation by Hudson, therefore the claim of municipal liability against Defendant Wayne County also fails. *Id*. The Court thus dismisses Count I as to both Defendants.

## II.     Gross Negligence Claim (Count II)

Plaintiffs assert their state law gross negligence claim only against Hudson.[1] Michigan's Governmental Tort Liability Act ("GTLA") bars ordinary negligence claims against governmental employees.  Under Michigan law, an officer is immune from tort liability if three conditions are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

*Hyman v. Lewis*, 27 F.4th 1233, 1238 (6th Cir. 2022); Mich. Comp. Laws § 691.1407(2).

"Gross negligence" is defined under the Act as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(8)(a).

The parties do not dispute that Hudson was acting within the scope of his authority and was engaged in the discharge of his government functions. Thus, the only issue remaining is whether Hudson's conduct amounted to gross negligence. Defendants contend that Plaintiff's gross negligence claim fails because: (1) Plaintiff cannot establish Hudson owed Plaintiffs a duty; and (2) a special relationship does not exist between Plaintiffs and Hudson. (ECF No. 13, PageID.138).

Whether a legal duty is owed is a question of law for the Court. *See Burton*, 2019 WL 1866593, at*2; *Reno v. Chung*, 559 N.W.2d 308, 309 (Mich. Ct. App. 1996). A public official

---

[1] Plaintiffs admitted in their Response to Defendants' Motion to Dismiss Plaintiffs' SAC that they had improperly listed Wayne County as liable for gross negligence.

owes a duty to the general public and not to any one individual unless a special relationship exists. *Reno*, 559 N.W.2d at 309. The existence of a special relationship requires at least some contact between the official involved and the victim as well as reliance by the victim upon the promises or actions of the official. *Id.* (citing *Gazette v. Pontiac*, 212 Mich. App. 536 N.W.2d 854). A county medical examiner is considered a public official. *Id.*

The facts in *Reno* are very similar to the facts alleged here. In *Reno*, the plaintiff, decedent's father, sued a Wayne County medical examiner for gross negligence in the performance of an autopsy of the decedent. *Id.* The father was charged with murder following the results of decedent's autopsy. *Id.* The charges against the father were later dropped, following information that the medical examiner's initial autopsy findings were incorrect. *Id.* There, the court found that no special relationship existed between the father and the medical examiner. *Id.* Therefore, defendant owed no duty to plaintiffs. *Id.*

In this case, Hudson is also a Wayne County medical examiner, meaning Defendant only has a duty to Plaintiffs if a special relationship exists between them. Plaintiffs make no such allegation here. Instead, Plaintiffs state Hudson's actions were grossly negligent with *no support* for their conclusion aside from disagreeing with his decision. Here, unlike in *Reno*, there is no evidence that Hudson's change to the official cause of death was incorrect. In fact, the findings of the police investigation support—and were the basis for—this change. Such a bare accusation is insufficient to show a special relationship between Defendants and Plaintiffs. Hudson thus cannot be deemed to owe Plaintiffs any duty. Therefore, Plaintiffs' gross negligence claim must be dismissed (Count II).

### III. Negligent Infliction of Emotional Distress (Counts III-V)

Finally, Plaintiffs make three Negligent Infliction of Emotional Distress claims against Defendants. The GTLA gives Wayne County broad immunity from tort liability in its exercise or discharge of government functions, unless an exception is otherwise provided by statute. M.C.L. § 691.1407; *Burton v. City of Detroit*, No. 340592, 2019 WL 1866593, at *2. Plaintiffs do not dispute that Defendant Wayne County is immune under the GTLA.[2] (ECF No. 17, PageID.198).

Hudson is also entitled to governmental immunity under these claims. As explained above, Hudson is immune from any claims of negligence when acting in the scope of his governmental employment, unless his actions rise to the level of gross negligence. Mich. Comp. Laws § 691.1407(2). Here, this Court found Hudson's actions do not rise to that level. Further, a claim of negligent infliction of emotional distress, by definition, does not rise to the level of gross negligence.

Accordingly, Counts III–V against both Defendants shall be dismissed.

### CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendant's Motion to Dismiss as to all five counts.

Dated: April 26, 2023

s/Sean F. Cox
Sean F. Cox
U. S. District Judge

---

[2] Plaintiffs admit their error in naming Defendant Wayne County for the NIED claims.